## Commonwealth ex rel. v. Klingaman et al.

*B. J. Duffy*, for petitioner.
*J. F. Mahoney*, for respondents.

PALMER, J., September 13, 1937.—The relator in this case is the mother of Lois Fay Klingaman, a female child born on March 9, 1936. Respondents are the father and paternal grandmother of Lois.

Prior to March 9, 1936, the child's parents lived together at 223 Lehigh Street, Tamaqua, Pa. The child was

born at the Coaldale Hospital, and nine days after its birth mother and child went to the home of the father's parents, located at 120 Washington Street, Tamaqua, Pa., the father having moved there upon his wife's entrance to the hospital.

Shortly after her dismissal from the hospital, the wife suffered from persecutory hallucinations evidenced by an unfounded belief that someone was pursuing her. She was taken to her sister's home, and in June 1936 committed to the Schuylkill County Hospital for the Insane, whence she was discharged on probation on July 28, 1936. Dr. Bowers testified that she was on the date of her commitment suffering with "puerperal insanity" but that she was cured on the day of her discharge. It is his opinion that only in the event of her giving birth to another child would the malady possibly recur.

Marital relations have not been resumed since her discharge. The present custodians of the child are capable people, and the child is receiving proper care. There is no question in the case as to the moral fitness of any of the parties.

"It has been the usual practice in Pennsylvania, where no reason appears to the contrary, to commit a child of tender years to its mother, but that rule is not a rigid one and is not observed where the welfare of the child is not promoted by adherence to it": Commonwealth ex rel. v. Stark, 94 Pa. Superior Ct. 86, 88.

It developed in the testimony that the grandmother of petitioner is insane, and has been for many years an inmate of the Schuylkill County Hospital for the Insane. Dr. Bowers, who had petitioner under observation for six weeks, feels that her bearing another child would be a "dangerous experiment".

Under the present situation, this petitioner may make her home with her husband and his parents, or she may visit her daughter at any time she pleases. Due to petitioner's said past ailment, and the desire of her husband and his parents to welcome her where she will be able to

have her daughter continuously in her custody, she ought for the present to relinquish her right to be alone with the child; and we therefore come to the conclusion that it is best for its welfare to have it remain in its present home.

And now, September 13, 1937, the petition for a writ of habeas corpus is dismissed.