Commonwealth ex rel. Thompson *v.* Altieri et ux., Appellants.

Argued October 2, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Vincent C. Veldorale,* for appellants.

*Anna Frank Dawson,* with her *Elliot J. Goldman,* for appellee.

OPINION BY ERVIN, J., November 12, 1957:

This is a habeas corpus proceeding in which the father, petitioner, seeks the custody of his eight-year old son, Thomas James Thompson, from Michael Altieri and Teresa Altieri, his wife. Michael Altieri is a cousin of the boy's deceased mother.

The parents of the boy were married on April 9, 1943 and lived together until the mother's death on July 10, 1949. Three children were born of the marriage: Rosemary Grace Thompson, born March 18, 1944; Barbara Ann Thompson, born April 28, 1947; and the boy whose custody is sought in these proceedings, Thomas James Thompson, born November 4, 1948. At the time of the mother's death, Rosemary Grace Thompson was five years old, Barbara Ann Thompson was two years old and Thomas James Thompson was seven months old. Following a family conference at the time

of the mother's death, the two girls were placed with one of their maternal aunts in upper New York State and the infant son with the Altieris. Petitioner placed his son with them because they had volunteered and the child at that time was being treated at the Skin and Cancer Hospital, which was near the home of the Altieris. All parties agree that the original placement of the child was on a temporary basis until the father could get a housekeeper. Subsequently the arrangement was continued on an informal family basis. Teresa Altieri, one of the respondents, testified that she and her husband agreed to continue to keep the boy under the condition that the lad would remain with the respondents if the father should remarry. The petioner testified that all custodial arrangements with the respondents were on a temporary basis. The father testified that he visited the child regularly until April 1956, when differences arose between the parties concerning future custody of the child. The respondents admitted some visits by the father during the years but denied the frequency and regularity of the visits.

On May 16, 1956 the petitioner was married to Pearl Helen Ernwood and established a home in Levittown, Pennsylvania. Immediately after his remarriage, petitioner went to New York State to the maternal aunt and returned to his home with his two daughters and they have been living with him since that time and have been legally adopted by petitioner's present wife. His second wife has expressed a willingness and readiness to accept the boy and to raise him with his two sisters. The petitioner requested the respondents to return the boy to him but they have refused to do so. At the time of the hearing before Judge SPAULDING, the child in question was eight years of age, his sisters were 10 and 13 years of age, the petitioner and his wife were each 37 years of age and the respondents were 56 and

51 years of age. The children have been raised in the Catholic faith and will continue to be so raised, notwithstanding that the father and his second wife are Protestants.

The court below found that "the father never expressly or by implication surrendered his parental rights nor has there been an abandonment of the child."

The respondents also contend that there was an agreement whereby the father gave permanent custody of the child to the respondents. This, however, the father specifically denied and the court below found that there was no such agreement.

It is now the law in Pennsylvania that the credibility of witnesses and the weight to be given to their testimony are for the hearing judge. We may not nullify his findings and substitute ours. *Com. ex rel. Harry v. Eastridge,* 374 Pa. 172, 177, 97 A. 2d 350. See also *Com. ex rel. Shroad v. Smith,* 180 Pa. Superior Ct. 445, 451, 119 A. 2d 620.

There was adequate testimony to support the findings and conclusions of the court below.

"The general rule is that the father is entitled to the custody of his infant children. Com. ex rel. Denny v. Murdock, 94 Pa. Superior Ct. 59, 62. In Com. ex rel. McTighe v. Lindsay, 156 Pa. Superior Ct. 560, 562, 40 A. 2d 881, we said: 'Because he is obligated by law to maintain and educate his children, a parent has the legal right to the custody of his child. This right is not absolute, but still it is so moving and cogent that it is forfeitable only by misconduct or by other factors which substantially affect the child's welfare.' See also Com. ex rel. Fell v. Brown, 100 Pa. Superior Ct. 353. The paramount consideration in cases of this nature is at all times the welfare of the child, which includes its physical, intellectual, moral and spiritual well-being, and all other considerations are subordinate. Com. ex

rel. Kuntz v. Stackhouse, 176 Pa. Superior Ct. 361, 363, 364, 108 A. 2d 73. However, the parent's prima facie right to custody may be forfeited if convincing reasons appear that the best interest and permanent welfare of the child will be served by awarding custody to someone else. Com. ex rel. Burke v. Birch, 169 Pa. Superior Ct. 537, 539, 83 A. 2d 426." *Com. ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 175, 116 A. 2d 336.

We have read the record in this case and can find no evidence to justify a finding that the father has forfeited his right to custody of his son. The father, a young man of 29 years of age, the parent of three young children, a bus operator for the Philadelphia Transportation Company, was confronted with grave problems at the untimely death of his wife. He did not willingly give up the custody of his children at that time but did so only under the dire necessities of the situation. It is true that he did not contribute to the support of his infant son from that time until the present time but that was only because the respondents did not want any support from him. This would not forfeit his right to custody. *Com. ex rel. Keenan v. Thomas et ux.,* 151 Pa. Superior Ct. 131, 30 A. 2d 246. He did visit his children periodically and never evidenced any intention of abandoning them. Just as soon as he was able to get another wife and home, he immediately endeavored to bring his children together. It is to the advantage of all children of the same parents that they be reared together in the family relationship. *Com. ex rel. Reese v. Mellors,* 152 Pa. Superior Ct. 596, 598, 33 A. 2d 516; *Com. ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 645, 98 A. 2d 437.

The difference in ages between the respondents and the petitioner, while not controlling, is a factor which should be taken into consideration. The boy has undoubtedly formed an attachment for the Altieris but

there is nothing in this record to indicate that he has any deep seated antipathy toward his father and his stepmother. He did indicate an affection for his sisters.

All in all, we can find no real reason for disagreeing with the disposition of this case as made by the court below.

Order affirmed.

GUNTHER and WOODSIDE, JJ., dissent.