Commonwealth ex rel. McTighe *v.* Lindsay et ux., Appellants.

Argued November 21, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Robert M. Dale,* for appellants.

*T. F. Ryan,* with him *A. R. Osmer,* for appellee.

OPINION BY RENO, J., January 25, 1945:

In this habeas corpus proceeding, custody of an eight-year old girl was awarded to her father, the relator. The respondents, husband and wife, have had possession of the child since she was seven months old, and they have appealed.

The father lives in New York City. He is a chef's steward who manages restaurant facilities in construction camps and similar projects. He travels all over the country; his absences from New York are long and frequent; he is not now married; and he does not maintain a permanent residence. He has arranged to place his daughter in the home of two women who own and maintain a large and commodious modern house in Tuckahoe, New York, where he will be able to visit her more frequently, and remain with her for longer periods. The advantages accruing to the daughter by this arrangement, and the character and capacity of the women with whom she will reside, have not been questioned. The father is conceded to be a respectable, industrious and capable man.

As a boy and young man, the father lived in Pennsylvania, and he and respondents were intimate friends. When his marriage was terminated by a divorce, he brought his infant daughter to respondents' home and they agreed to board and lodge her for a stipulated monthly payment. They have been infinitely more than purveyors of food and shelter. They have taken the child into their hearts as well as their home, and she has virtually become their own daughter, enfolded in their affectionate tenderness and love. They have admirably performed their tasks. Their love and affection have so completely surrounded her that unconsciously they have crowded her father out of her life, although he has visited her several times each year. Doubtless his recognition of her decreasing affection for him pre-

cipitated this action to recover her custody. That, and the understandable desire to place her in an environment more comportable with his enlarged financial means, and nearer to his New York headquarters, motivated his action.

Elements frequently urged in other cases do not appear in this record. There was no abandonment of the child. There was no agreement that respondents should adopt her or become her de facto foster parents. The choice presented to us is between the legal right of this morally fit and financially able father and respondents' intense craving for the continued companionship of the child to whom they have naturally become deeply attached and devoted.

Lacking prescience, the choice is always difficult. Nonetheless, we strive constantly to lay aside all other considerations, and to seek earnestly for that conclusion which will best serve the future interests and the permanent welfare of the child. This is the guiding star in formulating a decision. *Com. ex rel. v. Daven,* 298 Pa. 416, 148 A. 524. Because he is obligated by law to maintain and educate his children, a parent has the legal right to the custody of his child. This right is not absolute, but still it is so moving and cogent that it is forfeitable only by misconduct or by other factors which substantially affect the child's welfare. *Com. ex rel. Fell v. Brown,* 100 Pa. Superior Ct. 353. Experience has shown that generally a child's welfare is best promoted by entrusting its future to its parents. This experience is the basis for the principle that prima facie the parent is entitled to custody, and from this rule we depart only when we are constrained by the most compelling reasons. *Com. ex rel. Keenan v. Thomas,* 151 Pa. Superior Ct. 131, 30 A. 2d 246. We understand, and sympathize with, suitable custodians who have become attached to a child, but this of itself is not a sufficient reason for depriving parents of their natural

and legal right of companionship. *Com. ex rel. Miller v. Barclay,* 96 Pa. Superior Ct. 315. Nor can the power of the court, in proper circumstances, to commit custody to a non-resident parent be questioned. *Com. ex rel. Fortunes v. Manos,* 140 Pa. Superior Ct. 352, 13 A. 2d 886.

We note, but merely to exclude from the scope of our decision, the questionable methods pursued by both parties to secure or retain possession of the child. We can well understand that they were animated by excessive zeal which overcame sound judgment. The court below held three hearings and filed three opinions, but the fundamental question, the permanent welfare of the child, is the only one which calls for discussion. Upon that issue, our independent study of the testimony, *Com. ex rel. Lewis v. Tracy,* 155 Pa. Superior Ct. 257, 38 A. 2d 405, has brought us to the same conclusion reached by the court below. The respondents amply demonstrated their own high qualifications, but they failed to overcome the father's prima facie right to the custody of his child.

Order affirmed.