ROBERT C. SPARKS

*v.*

MONICA M. SPARKS

(No. 14685)

Decided September 16, 1980.

---

*Baer, Napier & Colburn and William K. Napier,* for appellant.

No appearance for appellee.

MILLER, JUSTICE:

The appellant, Monica M. Sparks, appeals a final order of the Circuit Court of Kanawha County enjoining her from traveling with her minor children beyond the continental limits of the United States. For the reasons set forth below, the order is reversed.

Mr. and Mrs. Sparks were married in 1967 in England. Mr. Sparks was a United States citizen and Mrs. Sparks then a British subject. Following their marriage, the couple moved to the United States and Mrs. Sparks acquired United States citizenship. In 1976, the couple was divorced by the Circuit Court of Kanawha County. Custody of the two children of the marriage, then ages 8 and 6, was awarded to Mrs. Sparks. The visitation rights of Mr. Sparks were general, "at such reasonable times as will not interfere with [the children's] proper care, maintenance, health and education."

The present controversy arose in 1978 when Mr. Sparks learned that Mrs. Sparks planned a summer visit with the children to Scotland, her native home. Alleging that "he believes that she would remain in Scotland with them and entirely defeat [his] rights of visitation," Mr. Sparks obtained a temporary injunction enjoining Mrs. Sparks from taking the children out of the State of West Virginia.

Upon a final hearing on November 9, 1978, the Circuit Court entered a permanent injunction restraining Mrs. Sparks from taking the children "out of the continental limits of the United States," and "from the State of West Virginia except for visits to other States."

Although the transcript of the final hearing was not included as a part of the record on appeal, the basis for entering the injunction was set forth by the Circuit Court in its findings of fact and conclusions of law. The

Circuit Court stated that Mrs. Sparks testified that she planned to take the children to Scotland to visit her mother, a partial invalid, during the children's summer vacation and that she had no intention of remaining there permanently.[1] Apparently, there was no testimony to the contrary.

The court concluded, "in view of the fact that [Mrs. Sparks] conceivably could keep the children in [Scotland] longer than she says," that an injunction against travel outside the United States was necessary to protect the visitation rights of Mr. Sparks.

The single issue in this case involves the right of a parent with custody of minor children to temporarily remove the children beyond the jurisdiction of the court.

The right of temporary removal appears to have received little attention by appellate courts, and where considered, the courts offer no guidelines. *See Gantner v. Gantner*, 39 Cal.2d 272, 246 P.2d 923 (1952) (instructing trial court to decide whether best interests of child promoted by allowing temporary trip to Australia); *Chatelain v. Chatelain*, 93 R.I. 136, 172 A.2d 332 (1961) (upholding trial court decision to permit custodial parent to take children to Switzerland for two years).

In *Pugh v. Pugh*, 133 W.Va. 501, 56 S.E.2d 901 (1949), we held that where appropriate, a court can vest custo-

---

[1] The complete findings of fact and conclusions of law, insomuch as they are relevant to the issue of the children's traveling, are as follows:

"The Court does find as a fact that the children of Robert C. Sparks, plaintiff-petitioner, informed him that their mother intended to take them to [Scotland]; that the respondent is a native of the British Isles and is a naturalized citizen of the United States of America; that respondent has resided in the United States continuously for a period of eleven years; that respondent testified that she proposed to take the children to [Scotland] to visit their grandmother who is 72 years old and a partial invalid; that she had no intention of permanently removing the children from the United States; that the period of removal planned was in the summer sometime after the ending of school in the Spring to the beginning in the Fall; that she is not able to post a bond conditioned on her return of the children at that time * * * ."

dy of a child in a person who may permanently take it out of State:

"In a habeas corpus proceeding, or other proceeding, to determine the conflicting claims of persons to the custody of a child, a court of competent jurisdiction has the inherent power, unless restricted by statute, to grant the custody of an infant to a person who does not reside in that jurisdiction and to permit the person to whom it awards the custody of the child to remove it to another state or foreign jurisdiction. Watkins v. Rose, 115 S.C. 370, 105 S.E. 738; Jennings v. Anderson, 114 S.C. 506, 104 S.E. 189; Ex parte Davidge, 72 S.C. 16, 51 S.E. 269; Commonwealth ex rel. Miller v. Wagner and Commonwealth ex rel. Wagner v. Miller, 160 Pa.Super. 536, 52 A.2d 235; Commonwealth ex rel. Lamberson v. Batyko, 157 Pa.Super. 389, 43 A.2d 364; Pyles v. Pyles, 157 Pa.Super. 450, 43 A.2d 651; Commonwealth ex rel. McTighe v. Lindsay, 156 Pa.Super. 560, 40 A.2d 881; Commonwealth ex rel. Fortunes v. Manos, 140 Pa.Super. 352, 13 A.2d 886; Commonwealth ex rel. Black v. Black, 79 Pa.Super. 409; Parrish v. Parrish, 116 Va. 476, 82 S.E. 119, L.R.A.1915A, 576; Ex parte Means, 176 N.C. 307, 97 S.E. 39; Workman v. Workman, 191 Ky. 124, 229 S.W. 379; State ex rel. McGhee v. Superior Court, 99 Wash. 619, 170 P. 130, L.R.A.1918C, 921; Wilson v. Mitchell, 48 Colo. 454, 111 P. 21, 30, 30 L.R.A., N.S., 507." [133 W.Va. at 508, 56 S.E.2d at 905].

Pugh also recognized the conventional rule that when the removal "will not serve, or is detrimental to, the welfare of the child * * * such removal will not be permitted." [133 W.Va. at 509, 56 S.E.2d at 905]. Other courts have reached a similar conclusion in permitting permanent removal where appropriate even though the removal may make the exercise of visitation rights by the noncustodial parent economically impractical. *Nelson v. Card*, 162 Colo. 274, 425 P.2d 276 (1967); *Raymond v. Raymond*, 165 Conn. 735, 345 A.2d 48 (1974); *In re Marriage of Lower*, 269 N.W.2d 822 (Iowa 1978); *Hutchins v. Hutchins*, 84 Mich. App. 236, 269 N.W.2d 539 (1978);

*Sanderson v. Seaney,* 224 So.2d 862 (Miss. 1969); *Jafari v. Jafari,* 204 Neb. 622, 284 N.W.2d 554 (1979); *see* Annot., *Order in Divorce or Separation Proceeding Concerning Removal of Child from Jurisdiction, and Award of Custody to Nonresident,* 154 A.L.R. 552 (1945); Annot., *Nonresidence as Affecting One's Right to Custody of Child,* 15 A.L.R.2d 432 (1951); 24 Am. Jur. 2d *Divorce and Separation* §§ 797-98 (1966).

Here, where the request is for temporary removal, there would appear to be even less justification for its refusal. Since *Pugh* recognized that a permanent removal can be sanctioned, it would seem that a temporary removal must be less strictly viewed.

We, therefore, conclude that absent a showing that the health or welfare of the children would be substantially impaired, or that the temporary visitation is a subterfuge to remove the children from the jurisdiction of the court on a permanent basis, the custodial parent is entitled to take minor children out of the jurisdiction on a temporary basis.

The trial court apparently felt that there was a possibility that Mrs. Sparks would not return to this country with the children. Yet, no evidence was presented that suggests such a possibility. She is a naturalized United States citizen. Her two children are United States citizens, have lived continuously with her in the Huntington area and attend school there. There is no suggestion that she has maintained any extensive or close ties with Scotland, and no intimation that she has resigned from employment or sold her property, which might be suggestive of plans for permanent removal. Nor is there any evidence that the visit to Scotland would be detrimental to the children.

In short, nothing in the record provides credibility to the trial court's conclusion that Mrs. Sparks might not return from Scotland with the children. Before a court is warranted in enjoining a temporary visit to a foreign country of a custodial parent with minor children, its

conclusion must be anchored in fact rather than only inchoate suspicion.

The findings in this case do not sustain the court's injunction. Therefore, the court's order is reversed and the injunction dissolved.

*Reversed.*